USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 11/18/2020

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------------X
                  :
ALLSTAR MARKETING GROUP, LLC,             :
                  :
            Plaintiff,              :
                  :      20-CV-8406 (JPC)
      -v-                  :
                  :         ORDER
AFACAI et al.,                           :
                  :
            Defendants.          :
                  :
-----------------------------------------------------------------------X

JOHN P. CRONAN, United States District Judge:

On November 16, 2020, the Court held a telephonic hearing concerning Plaintiff's Motion for a Preliminary Injunction, at which Plaintiff and ContextLogic d/b/a Wish ("Wish") appeared. As stated on the record, the Court extended the Temporary Restraining Order ("TRO") signed by Judge Paul A. Crotty on October 9, 2020 (Dkt. 14), subject to the two exceptions in the Court's October 29, 2020 Order (Dkt. 27), pending further order of the Court. The Court finds good cause for such extension given the failure of any of the remaining 120 Defendants to appear and oppose the TRO, despite being served as of October 20, 2020, as well as the Court's requests for additional information from Plaintiff and Wish. (*See* Dkt. 39.)

The Court now concludes that the imposition of a Preliminary Injunction is merited in this case and will enter the Preliminary Injunction by separate Order, which shall remain in effect until further order by the Court. "Generally, a party seeking a preliminary injunction must establish '(1) irreparable harm and (2) either (a) a likelihood of success on the merits, or (b) sufficiently serious questions going to the merits of its claims to make them fair ground for litigation, plus a balance of the hardships tipping decidedly in favor of the moving party.'" *Oneida Nation of New York v. Cuomo*, 645 F.3d 154, 164 (2d Cir. 2011) (quoting *Monserrate v. N.Y. State Senate*, 599

F.3d 148, 154 (2d Cir. 2010)). "Additionally, the moving party must show that a preliminary injunction is in the public interest." *Id.* (citing *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 19–20 (2008)).

Based on the information before the Court, which has not been challenged by any of the Defendants, Plaintiff has demonstrated a high likelihood of success on the merits here. According to Plaintiff's Complaint, it holds a U.S. Trademark on its "SOCKET SHELF" electronic docking station and charging station. (*See* Dkt. 9 at 4, Exhibit B.) Plaintiff brings claims of trademark infringement of Plaintiff's federally registered trademark in violation of § 32 of the Federal Trademark (Lanham) Act, 15 U.S.C. §§ 1051 *et seq.*; counterfeiting of Plaintiff's federally registered trademark in violation of 15 U.S.C. §§ 1114(1)(a)-(b), 1116(d) and 1117(b)-(c); false designation of origin, passing off and unfair competition in violation of Section 43(a) of the Trademark Act of 1946, as amended (15 U.S.C. § 1125(a)); copyright infringement of Plaintiff's federally registered copyrights in violation of the Copyright Act of 1976, 17 U.S.C. §§ 101 *et seq.*; and related state and common law claims. (*Id.* at 1.) Plaintiff has identified numerous potentially infringing products sold by Defendants on Wish's online platform, and, as stated above, no Defendant has entered an appearance in this action to contest liability.

The focus of the preliminary injunction hearing, however, was not the likelihood of Plaintiff's success on the merits, but rather the appropriate scope of relief in the preliminary injunction, particularly with respect to provisions sought by Plaintiff that would entail a complete shutdown of Defendants' "storefronts" on Wish and a full freeze of all Defendants' assets on Wish. In determining the scope of an injunction, the Court must consider both Plaintiff's showing of irreparable harm and the public interest. As the Second Circuit has explained, "[t]o satisfy the irreparable harm requirement, [p]laintiffs must demonstrate that absent a preliminary injunction they will suffer an injury that is neither remote nor speculative, but actual and imminent, and one

that cannot be remedied if a court waits until the end of trial to resolve the harm." *Faiveley Transp. Malmo AB v. Wabtec Corp.*, 559 F.3d 110, 118 (2d Cir. 2009) (quoting *Grand River Enter. Six Nations, Ltd. v. Pryor*, 481 F.3d 60, 66 (2d Cir. 2007)).  Nonetheless, any "[i]njunctive relief should be narrowly tailored to fit specific legal violations," and "should not impose unnecessary burdens on lawful activity."  *Waldman Pub. Corp. v. Landoll, Inc.*, 43 F.3d 775, 785 (2d Cir. 1994); *see also Faiveley Transp. Malmo AB v. Wabtec Corp.*, 559 F.3d 110, 119 (2d Cir. 2009).

Having reviewed Plaintiff's and Wish's submissions and having listened to argument on both the TRO and the Preliminary Injunction, the Court finds that, at least during the preliminary stages of this case, a full storefront shutdown and asset freeze for the remaining Defendants are warranted.  As persuasively argued by Plaintiff, the full storefront shutdown serves to remedy the proverbial game of "whack-a-mole," whereby Plaintiff identifies a single infringing listing on Wish's platform only to have another potentially infringing listing be posted on a merchant's same or other storefront without Plaintiff's knowledge.  The Court finds particularly troubling the approximately 150 additional listings that Plaintiff has identified based on the additional search protocols for the Defendants' storefronts agreed upon by Wish and Plaintiff, which suggest pervasive trademark violations were occurring on Defendants' storefronts.  And the asset freeze is, at least for the moment, an appropriate remedy to preserve the equitable relief Plaintiff is seeking— an accounting of profits.  *See Gucci Am., Inc. v. Weixing Li*, 768 F.3d 122, 132–33 (2d Cir. 2014).  Again, no Defendant has appeared in this action to contest liability or the scope of the asset freeze in this case.

Accordingly, in a separately docketed Order, the Court will grant the proposed Preliminary Injunction Order proposed by Plaintiff on November 12, 2020 (Dkt. 37), subject to a number of clarifications and amendments as set forth in that Order.  For the avoidance of doubt, the Court reaffirms, as agreed by Plaintiff and Wish at the November 16, 2020 hearing, that under 4(d)(iii)

and 4(d)(iv), Wish need only produce "a full account of Defendants' sales history and listing history" and "Defendants' manufacturing, importing, exporting, advertising, marketing, promoting, distributing, displaying, offering for sale and/or selling" of those allegedly infringing products specifically identified by Plaintiff, either in its initial Complaint or following the agreed-upon search protocols.

Notwithstanding the grant of relief above, the Court continues to harbor concerns as to the scope of the Preliminary Injunction, particularly given the potential for a lengthy process of settlement discussions and default judgments. A full storefront shutdown and asset freeze threatens to unnecessarily burden lawful activity on Wish's platform in the long term, particularly given Wish's representation that these storefronts of the named Defendants represent more than $49 million in sales, the vast majority of which are not tied to any allegedly infringing products. (*See* Dkt. 40 at 6.) The risk of such an impact on Wish is particularly troubling since Plaintiff has elected not to pursue any claims against Wish, which at this point is still not a party this action.

Therefore, as stated on the record, Plaintiff and Wish shall make additional submissions of up to five pages by November 23, 2020, in which they should specifically identify the various cases cited during the Preliminary Injunction hearing and may also make any additional arguments not covered during that hearing, with a focus on the proper scope of injunctive relief in this case.

In addition, by November 25, 2020, Plaintiff is directed to provide further information about the approximately 150 additional allegedly infringing products it has identified as a result of the searches conducted pursuant to the protocols agreed to by Plaintiff and Wish. Plaintiff should provide information concerning: (1) the criteria used by Plaintiff to determine that a product infringed the trademark at issue in this case; (2) which Defendant listed each of the allegedly infringing products identified; (3) whether the identified product was in fact sold; and (4) the listed price for each identified product. Plaintiff and/or Wish, depending on which has the information,

are further directed to provide information about the amount of funds in each Defendant's Wish account that has been frozen as a result of the injunctive relief currently in place. The information regarding the current asset freeze may be jointly submitted by Plaintiff and Wish.

The Court will reassess the scope of the preliminary injunction following review of these submissions.

SO ORDERED.

Dated: November 18, 2020
New York, New York

                                              JOHN P. CRONAN
                                         United States District Judge