UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------------X
                                                  :

ALLSTAR MARKETING GROUP, LLC,         :

                            Plaintiff,                    :

                                                  :           20 Civ. 8406 (JPC)
                  -v-                            :
                                                  :               ORDER
AFACAI et al.,                                    :

                            Defendants.                :

-----------------------------------------------------------------------X

JOHN P. CRONAN, United States District Judge:

      Before the Court are a motion for default judgment and a proposed Final Default Judgment and Permanent Injunction Order from Plaintiff Allstar Marketing Group, LLC ("Allstar"). Dkts. 69 ("Motion"), 70 ("Proposed Order"). The Court held a show-cause hearing regarding Allstar's motion for default judgment on March 9, 2021. No Defendants appeared at that hearing. Today, the Court separately enters a Final Default Judgment and Permanent Injunction Order (the "Order"), which grants default judgments and issues damages awards as to 41 Defendants and issues various permanent injunctive relief. The Court writes herein to explain its reasoning for denying certain relief requested by Allstar.

## I. Background

      On January 15, 2021, Allstar moved for default judgments against 76 Defendants (the "Defaulting Defendants") on causes of action alleging trademark infringement and related claims concerning Allstar's "Socket Shelf" product. Dkt. 57. Allstar sought (1) an award of $50,000 in statutory damages against 31 Defaulting Defendants; (2) an award of $100,000 in statutory damages against 45 Defaulting Defendants; (3) various permanent injunctive relief; (4) delivery of any infringing products by the Defaulting Defendants to Allstar for destruction; (5) a post-

1

judgment asset restraining order; and (6) an order authorizing the release and transfer of the Defaulting Defendants' frozen assets to satisfy the damages award. Motion at 1-2. Since moving for default judgments, Allstar has voluntarily dismissed 35 of the Defaulting Defendants, *see* Dkts. 78, 79, leaving 41 Defaulting Defendants remaining in this action.[1]

With respect to its requests concerning post-judgment asset restraint and transfer of frozen assets, Allstar seeks an order (a) prohibiting the Third Party Service Providers[2] and the financial institutions holding the Defaulting Defendants' funds from "secreting, concealing, transferring, disposing of, withdrawing, encumbering or paying any of the Defaulting Defendants' Frozen Assets from or to Defaulting Defendants' Financial Accounts until further ordered by this Court," Proposed Order § III(3)(A); (b) forbidding the Defaulting Defendants[3] from "mak[ing] or suffer[ing] any sale, assignment, transfer or interference with any property in which they have an interest, except as set forth in subdivisions (h) and (i) of Section 5222" of New York's Civil

---

[1] The Complaint originally named 127 Defendants. Since the commencement of this action, Allstar has voluntarily dismissed its claims against 86 Defendants. *See* Dkts. 33, 39, 49, 50, 52, 53, 54, 56, 59, 60, 71, 72, 73, 74, 76, 77, 78, 79. Accordingly, the Final Default Judgment and Preliminary Injunction Order that the Court enters today concerns only the 41 Defaulting Defendants who have not been dismissed from this action.

[2] The "Third Party Service Providers" are defined in the Proposed Order as follows:

> Online marketplace platforms, including, without limitation, those owned and operated, directly or indirectly, by ContextLogic, such as Wish, as well as any and all as yet undiscovered online marketplace platforms and/or entities through which Defendants, their respective officers, employees, agents, servants and all persons in active concert or participation with any of them manufacture, import, export, advertise, market, promote, distribute, offer for sale, sell and/or otherwise deal in Counterfeit Products which are hereinafter identified as a result of any order entered in this action, or otherwise.

Proposed Order at p. iv.

[3] In this provision, the Proposed Order refers to Defendants collectively, rather than only those Defendants who have defaulted. The Court interpreters this as an error, and assumes that Allstar is not seeking relief as to Defendants that it has voluntarily dismissed from this action.

2

Practice Law and Rules ("N.Y. C.P.L.R."), *id.* § IV(1); (c) transferring the Defaulting Defendants' previously-frozen assets to Allstar within 20 days and prohibiting the financial institutions holding those assets from unfreezing the assets until after the judgment is satisfied, *id.* § V(1); (d) continuing the post-judgment restraining order until Allstar has fully recovered the judgment, *id.* § V(2); and (e) giving Allstar the authority to serve the Proposed Order on any financial institutions it later discovers control any of the Defaulting Defendants' assets, *id.* § V(3). In the Proposed Order, Allstar contends that this relief is in accordance with Rules 64 and 65 of the Federal Rules of Civil Procedure, 15 U.S.C. § 1116(a), and the Court's "inherent equitable powers to issue remedies ancillary to its authority to provide final relief." *See, e.g.*, *id.* § V(2). In its motion for default judgment, Allstar argues that if the Court does not find authority under those provisions, the Court should grant the relief pursuant to Rule 69 of the Federal Rules of Civil Procedure and N.Y. C.P.L.R. section 5225. Motion at 61.

## II. Scope of the Permanent Injunctive Relief

Allstar seeks a variety of permanent injunctive relief. As reflected in the Final Default Judgment and Preliminary Injunction that the Court separately enters, the Court grants much of that relief. The Court explains here why certain injunctive relief sought by Allstar has been denied.

**A. Applicable Law**

The Lanham Act allows a court to impose a permanent injunction. *See* 15 U.S.C. § 1116. A plaintiff seeking a permanent injunction must demonstrate: "(1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction." *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006); *see*

3

*Spin Master Ltd. v. 158*, 463 F. Supp. 3d 348, 376 (S.D.N.Y. 2020), *adhered to in part on reconsideration*, No. 18 Civ. 1774 (LJL), 2020 WL 5350541 (S.D.N.Y. Sept. 4, 2020). "Permanent injunctions are generally granted where liability has been established and there is a threat of continuing infringement." *John Wiley & Sons, Inc. v. Book Dog Books, LLC*, 327 F. Supp. 3d 606, 637 (S.D.N.Y. 2018) (quoting *Complex Sys., Inc. v. ABN AMRO Bank N.V.*, No. 08 Civ. 7497 (KBF), 2014 WL 1883474, at *11 (S.D.N.Y. May 9, 2014)). "A district court must ensure that a permanent injunction is 'narrowly tailored to fit specific legal violations' and does not 'impose unnecessary burdens on lawful activity.'" *Id.* (quoting *Starter Corp. v. Converse, Inc.*, 170 F.3d 286, 299 (2d Cir. 1999)).

**B. Appropriateness of a Permanent Injunction**

Allstar has met its burden to show the need for a permanent injunction. First, Allstar faces a threatened loss of goodwill and control over its trademark as a result of the Defaulting Defendants' sale of inferior products. *See Spin Master Ltd.*, 463 F. Supp. 3d at 376; *Int'l Council of Shopping Ctrs., Inc. v. Glob. Infotech LLC*, No. 18 Civ. 8856 (AJN), 2019 WL 2004096, at *5 (S.D.N.Y. May 7, 2019) ("Irreparable harm exists in a trademark case when the party seeking the injunction shows that it will lose control over the reputation of its trademark . . . because loss of control over one's reputation is neither calculable nor precisely compensable." (quoting *U.S. Polo Ass'n, Inc. v. PRL USA Holdings, Inc.*, 800 F. Supp. 2d 515, 540 (S.D.N.Y. 2011), *aff'd*, 511 F. App'x 81 (2d Cir. 2013))). Second, Allstar has demonstrated that there is no adequate remedy at law. The Defaulting Defendants have failed to appear in this action, making calculating monetary damages difficult, if not impossible. In addition, the Defaulting Defendants' past infringing behavior and failure to appear in this action makes it likely, absent an injunction, that the Defaulting Defendants will continue to infringe on Allstar's rights. *See Int'l Council of Shopping Ctrs., Inc.*, 2019 WL

2004096, at *5 ("Defendant's past conduct raises a likelihood that it will continue to infringe Plaintiff's trademark if the preliminary injunction is lifted[, which] . . . establishes the second element: a plaintiff has no adequate remedy at law if, absent an injunction, 'the defendant is likely to continue infringing' its intellectual property rights." (quoting *Warner Bros. Entm't Inc. v. RDR Books,* 575 F. Supp. 2d 513, 553 (S.D.N.Y. 2008))). Third, the balance of hardships weighs in favor of the injunction: "[T]hrough their default, the Defaulting Defendants have not identified any hardships for the Court to consider—nor could they[,]" *Spin Master Ltd.*, 463 F. Supp. 3d at 376, as "[i]t is axiomatic that an infringer of copyright cannot complain about the loss of ability to offer its infringing product," *WPIX, Inc. v. ivi, Inc.*, 691 F.3d 275, 287 (2d Cir. 2012) (alteration in original) (internal quotation marks omitted). "Finally, 'the public has an interest in not being deceived—in being assured that the mark it associates with a product is not attached to goods of unknown origin and quality.'" *Int'l Council of Shopping Centers, Inc.*, 2019 WL 2004096, at *5 (quoting *N.Y.C. Triathlon, LLC v. Triathlon Club, Inc.*, 704 F. Supp. 2d 305, 344 (S.D.N.Y. 2010)); *accord John Wiley & Sons, Inc.*, 327 F. Supp. 3d at 637 ("[A] permanent injunction would not disserve the public interest as it would prevent the proliferation of counterfeit works.").

Nonetheless, although a permanent injunction is warranted, the scope of Allstar's proposed injunction is overbroad.

## C. Application to "Successors and Assigns" of the Defaulting Defendants

Allstar requests that the Court permanently enjoin the Defaulting Defendants from future trademark violations related to the "Socket Shelf." Proposed Order § III(1).[4] However, the Proposed Order would extend such an injunction not just to the Defaulting Defendants, but also to

---

[4] The Proposed Order has two provisions marked as section III(2). The Court assumes that the first was meant to be labeled section III(1) and cites it as such herein.

their "officers, agents, servants, employees, *successors and assigns* and all persons acting in concert with or under the direction of Defaulting Defendants (regardless of whether located in the United States or abroad), who receive notice of this Order." *Id.* (emphasis added). As the Honorable Lewis J. Liman found when faced with similar language, the extension of injunctive relief to "successors and assigns" would be overbroad and not permissible under Rule 65. *See Spin Master Ltd.*, 463 F. Supp. 3d at 377.

Injunctive relief pursuant to Rule 65 is limited to certain individuals, assuming they receive actual notice of the injunction: "(A) the parties; (B) the parties' officers, agents, servants, employees, and attorneys; and (C) other persons who are in active concert or participation with anyone described in Rule 65(d)(2)(A) or (B)." Fed. R. Civ. P. 65(d)(2). To the extent that "successors and assigns" are acting in consent or participation with the Defaulting Defendants (or their officers, agents, servants, employees, or attorneys), and have notice of the injunction, they would be covered by other language in the Proposed Order, and that would be consistent with Rule 65(d)(2). But to the extent successors or assigns are not in active concert or participation with the Defaulting Defendants (or their officers, agents, servants, employees, or attorneys), injunctive relief as to them would not be permissible under Rule 65(d)(2). Accordingly, the Court has removed the reference to "successors and assigns" in Allstar's proposed language, and has added the word "active" before "concert" to track Rule 65(d)(2).

**D. Request for Permanent Denial of Services**

The Court also denies Allstar's request to enjoin the Third Party Service Providers from providing services to the Defaulting Defendants. The requested provision, which effectively would amount to a permanent shut-down order, reads:

[T]he Third Party Service Providers are permanently enjoined and restrained from:

> A. providing services to Defaulting Defendants and Defaulting Defendants User Accounts and Merchant Storefronts, including, without limitation, continued operation of Defaulting Defendants User Accounts and Merchant Storefronts . . . .

Proposed Order § III(4)(A). The Proposed Order also would extend to anyone knowingly instructing, aiding, or abetting any person or business entity engaged in such activity. *Id.* § III(4)(B). There are two problems with this language.

First, as other courts have found when reviewing substantially similar proposed language, including from this same Plaintiff, this language is overbroad. *See Spin Master Ltd.*, 463 F. Supp. 3d at 381-82; *Allstar Mktg. Grp. v. 158*, No. 18 Civ. 4101 (GHW), 2019 WL 8509382, at *2 (S.D.N.Y. Mar. 12, 2019), *reconsideration denied*, 2019 WL 3936879 (Aug. 20, 2019). As noted above, injunctive relief must be narrowly tailored to address the specific legal violation, and cannot burden lawful activity. *Starter Corp.*, 170 F.3d at 299.

In the Order issued today, the Court has issued sizeable damages awards as to the 41 remaining Defaulting Defendants and has permanently enjoined them, as well anyone in active concert or participation with them, from further infringing on the product that is at issue in this case. But there is no evidence before this Court of those Defaulting Defendants engaging in other violations of federal law, let alone conduct that has violated Allstar's trademark rights. Yet, the Proposed Order would permanently prohibit the Third Party Service Providers from allowing those Defaulting Defendants to sell any types of goods on their platforms, even where such sales do not run afoul of federal law. As the Honorable Gregory H. Woods explained in rejecting similar language proposed by Allstar in connection with default judgments in another trademark infringement case:

> [T]he Court appreciates the difficulty of policing counterfeiting operations, and the potentially salutary effect of a judicial order that completely terminates any future

> commercial operations of a counterfeiter as a sanction for its behavior. Still, the Court does not believe that the imposition of an *in terrorem* sanction that completely terminates commercial activity of any type by the Defaulting Defendants is a proportionate remedy. The Defaulting Defendants have been enjoined from further infringement, and Plaintiff has been compensated for the infringing conduct through the award of a monetary judgment. Further sanction in addition to those targeted remedies is excessive.

*Allstar Mktg. Gp., LLC v. 158*, 2019 WL 8509382, at *2; *accord Spin Master Ltd.*, 463 F. Supp. 3d at 382 (explaining that the plaintiff's requested shut-down order would "violate[] the fundamental principle that "[i]njunctive relief should be narrowly tailored to fit specific legal violations' and that 'an injunction should not impose unnecessary burdens on lawful activity'" (alteration in original) (*quoting Waldman Pub. Corp. v. Landoll, Inc.*, 43 F.3d 775, 785 (2d Cir. 1994))).

The proposed permanent shut-down order is overbroad for another reason: It would extend the injunction to third party service providers that have not yet been identified. In this case, only one third party service provider has been identified, Contextlogic d/b/a Wish ("Wish"). On January 8, 2021, the Court granted in part Wish's motion to intervene in this case, concluding that Wish's interest in this matter were cognizable enough to support intervention, and those interests might be impaired depending on this disposition of this case. Dkt. 58 at 5-6. Extending permanent injunctive relief to entities that have not even been identified, particularly where such entities may likewise have a cognizable interest that could be impaired by the Court's disposition of this case, would be excessive and go beyond the narrowly tailored nature of injunctive relief.

E. **Unspecified Product Confusion**

The Court also has removed another provision of the Proposed Order that it finds overbroad. Section III(1)(E) of the Proposed Order would permanently enjoin the Defaulting Defendants (and their officers, agents, servants, employees, and persons acting in active concert with them) from

> using any false designation of origin or false description, or engaging in any action which is likely to cause confusion, cause mistake and/or to deceive members of the trade and/or the public as to the affiliation, connection or association of any product manufactured, imported, exported, advertised, marketed, promoted, distributed, displayed, offered for sale or sold by Defaulting Defendants with Plaintiff, and/or as to the origin, sponsorship or approval of any product manufactured, imported, exported, advertised, marketed, promoted, distributed, displayed, offered for sale or sold by Defaulting Defendants and Defaulting Defendants' commercial activities by Plaintiff . . . .

Proposed Order § III(1)(E). While not entirely clear, this language would appear to cover the sale and distribution of non-Socket Shelf products. Without any evidence to suggest illegal activity as to such products, the requested relief would be overbroad. Moreover, it is unclear why this language is necessary as to infringements relating to Plaintiff's Socket Shelf in light of other language in the Proposed Order that would permanently enjoin the Defaulting Defendants from selling or distributing any products infringing on a Socket Shelf trademark or copyright. *See* Proposed Order § III(1)(A)-(D).

### III. Execution of a Judgment

**A. Applicable Law**

Rule 69 governs the procedure for execution of a judgment. Specifically, Rule 69 provides that "[t]he procedure on execution—and in proceedings supplementary to and in aid of judgment or execution—must accord with the procedure of the state where the court is located, but a federal statute governs to the extent it applies." Fed. R. Civ. P. 69(a)(1).

The applicable "procedure of the state where the court is located" is primarily found in sections 5222 and 5225 of the N.Y. C.P.L.R. Section 5222 provides that a judgment creditor may serve a restraining notice upon any person or entity holding the property of the debtor, thereby prohibiting that person or entity from transferring, selling, or destroying the property. N.Y. C.P.L.R. § 5222. Section 5225 then provides that, for property in the possession of a judgment

debtor, the judgment creditor may make a motion, which it must serve upon the judgment debtor, and must show that "the judgment debtor is in possession or custody of money or other personal property in which he has an interest" *Id.* § 5225(a). After making this showing, "the court shall order that the judgment debtor pay the money, or so much of it as is sufficient to satisfy the judgment, to the judgment creditor." *Id.* For property not in the possession of the judgment debtor, *i.e.*, in possession of a garnishee, section 5225 provides that,

> Upon a special proceeding commenced by the judgment creditor, against a person in possession or custody of money or other personal property in which the judgment debtor has an interest, or against a person who is a transferee of money or other personal property from the judgment debtor, where it is shown that the judgment debtor is entitled to the possession of such property or that the judgment creditor's rights to the property are superior to those of the transferee, the court shall require such person to pay the money . . . .

*Id.* § 5225(b). Section 5225 further provides that "[n]otice of the proceeding shall also be served upon the judgment debtor" and that the court "may permit the judgment debtor" or "any adverse claimant to intervene in the proceeding." *Id.*

The Second Circuit has made clear that in federal court, "a party seeking a money judgment against a non-party garnishee may proceed by motion and need not commence a special proceeding, as long as the court has personal jurisdiction over the garnishee." *CSX Transportation, Inc. v. Island Rail Terminal, Inc.*, 879 F.3d 462, 69 (2d Cir. 2018); *see also Allstar Mktg. Grp. v. 158*, No. 18 Civ. 4101 (GHW), 2019 WL 3936879, at *4 (S.D.N.Y. Aug. 20, 2019) ("If the court finds that it has personal jurisdiction over the garnishee and 'it is shown that the judgment debtor is entitled to the possession of such property or that the judgment creditor's rights to the property are superior to those of the transferee,' the court must then order the garnishee to turn over the property in its possession to the judgment creditor." (quoting N.Y. C.P.L.R. § 5225(b))).

Contrary to Allstar's suggestion, Rule 64, Rule 65, and section 1116(a) do not govern the asset freeze or transfer at issue here. Rule 64 provides that "*[a]t the commencement of and*

10

*throughout an action*, every remedy is available that, under the law of the state where the court is located, provides for seizing a person or property to secure satisfaction of the *potential judgment*," but that "a federal statute governs to the extent it applies." Fed. R. Civ. P. 64 (emphases added). Thus, Rule 64, unlike Rule 69, "applies to provisional remedies, not final relief." *Allstar Mktg. Grp. v. 158*, 2019 WL 3936879, at *2 n.2 (citing to 11A Fed. Prac. & Proc. Civ. § 2931 (3d ed.)).

As discussed above, Rule 65 governs injunctions and restraining orders. But courts regularly have rejected the notion that Rule 65 can be used to circumvent the more specific provisions of Rule 69 that apply to execution of a judgment. *See id.* at *2 ("The Court is therefore skeptical that Rule 65 or 15 U.S.C. § 1116(a) can be used to support an injunction that blatantly circumvents the requirements of Rule 69."); *WowWee Grp. Ltd. v. Meirly*, No. 18 Civ. 706 (AJN), 2019 WL 1375470, at *11 (S.D.N.Y. Mar. 27, 2019) (concluding that it "[i]s not appropriate to 'adopt a reading of a post-judgment asset freeze remedy under Rule 65 that would seemingly subsume the remedies provided by Rule 69 and state law'" (quoting *Tiffany (NJ) LLC v. QI Andrew*, No. 10 Civ. 9471 (KPF), 2015 WL 3701602, at *12 n.9 (S.D.N.Y. June 15, 2015))), *reconsideration denied*, 2020 WL 70489 (S.D.N.Y. Jan. 7, 2020).

Moreover, Rule 65 does not apply to the third parties at issue here. As also discussed above, the Rule specifies that the only individuals and entities that may be bound are "the parties," "the parties' officers, agents, servants, employees, and attorneys," and "other persons who are in active concert or participation with [the parties or their officers, agents, servants, employees, and attorneys]." Fed. R. Civ. P. 65(d)(2). "Rule 65(d) 'is designed to codify the common-law doctrine that defendants may not nullify a decree by carrying out prohibited acts through aiders and abettors, although [those aiders and abettors] were not parties to the original proceeding.'" *Doctor's Assocs., Inc. v. Reinert & Duree, P.C.*, 191 F.3d 297, 302-03 (2d Cir. 1999) (quoting *Heyman v. Kline*, 444

11

F.2d 65, 66 (2d Cir. 1971)). "Courts in this Circuit have found 'active concert' between non-parties and already-enjoined parties in cases where an enjoined party is substantially intertwined with a non-party, including the shared occupation of office space, payment of employee expenses between the non-party and enjoined party, considerable control by the enjoined party over the non-party's operations, and other substantial interconnections." *John Wiley & Sons, Inc.*, 327 F. Supp. 3d at 638. Allstar has made no showing that the financial institutions here were in "active concert" with the Defaulting Defendants.

Finally, Allstar's reliance on a provision of the Lanham Act, 15 U.S.C. § 1116(a), is unpersuasive as well. Section 1116(a) gives courts the "power to grant injunctions, according to the principles of equity and upon such terms as the court may deem reasonable, to prevent the violation of any right of the registrant of a mark" or to prevent further violation of the Lanham Act. The injunction must be "narrowly tailored to fit specific legal violations" and must "not impose unnecessary burdens on lawful activity." *Allstar Mktg. Grp. v. 158*, 2019 WL 3936879, at *3 (quoting *Starter Corp.*, 170 F.3d at 299). Courts generally have read section 1116(a) to allow a court to enter a limited injunction, such as one barring a defendant from continuing to infringe on a plaintiff's trademark. *See, e.g.*, *id.* But there is nothing in the Lanham Act to suggest that it should apply in lieu of Rule 69. Accordingly, courts generally have found that this provision does not govern the execution of a judgment. *See, e.g.*, *Off-White LLC v. 0225XIANGCHUN*, No. 19 Civ. 11626 (KPF), 2020 WL 3618963, at *2 (S.D.N.Y. July 2, 2020) ("Simply put, [section 1116(a)] 'does not deal with execution after a judgment is entered.'" (quoting *Spin Master Ltd.*, 463 F. Supp. 3d at 384 n.10)); *Spin Master Ltd*, 463 F. Supp. 3d at 384 n.10 ("Congress knows how to draft a statute to govern execution on or enforcement of a judgment when it wants to do so. . . . The fact that Congress did not draft the Lanham Act . . . to supplant the rule in the Federal

Rules of Civil Procedure for enforcement of judgments demonstrates that it did not intend a judgment under th[at] statute[] to be excepted from the Federal Rules.").

Thus, the Court rejects Allstar's contention that the relief it seeks with respect to post-judgment asset restraint and asset transfer is governed by Rule 64, Rule 65, or section 1116(a). Rather, the appropriate applicable law here is found at Rule 69 and, by extension, sections 5222 and 5225 of the N.Y. C.P.L.R.

**B. Request for Post-Judgment Attachment and Asset Transfer**

Allstar's Proposed Order, however, is in conflict with the procedural requirements of Rule 69 and New York state law. In reaching this conclusion, the Court largely adopts the reasoning of Judge Woods's opinion in *Allstar Mktg. Grp. v. 158*, 2019 WL 3936879. As Judge Woods explained when considering a substantially similar proposed order, also submitted by Allstar, the Proposed Order "contemplates a procedure that is the exact inverse of the procedure set forth in [sections] 5222 and 5225." *Id.* at *4.

The fundamental and fatal problem is that Allstar's Proposed Order does not allow a third party to defend any interests that the third party may have in the property or funds at issue. Section 5222 plainly requires a judgment creditor to serve a restraining notice on a person in possession of the defendant's property, *only after which* the judgment creditor may commence a special proceeding seeking relief under section 5225. In other words, New York law "requires Plaintiff to provide third-parties with notice and an opportunity to challenge a proposed turn over order *before* the order is issued." *Id.*

Nor does the Proposed Order allow the Court to make the findings that section 5225 requires. Section 5225 contemplates that an order be directed at "specific pieces of property," not "towards a defendant's frozen asset generally," as is the case here. *Mattel, Inc. v. 1622758984*,

No. 18 Civ. 8821 (AJN), 2020 WL 2832812, at *8 (S.D.N.Y. May 31, 2020). Section 5225 requires the Court to find that a third party or the judgment debtor "is in possession or custody of money or other personal property in which [the judgment debtor] has an interest." *Id.* (quoting N.Y. C.P.L.R. § 5225(a)). In the case of a third party, the Court must find that the judgment creditor is "entitled to possession of such property or that the judgment creditor's rights to the property are superior to those of the transferee." N.Y. C.P.L.R. § 5225(b). The Court is unable to do so under the Proposed Order here. In addition, the Court must find that it has personal jurisdiction over the third party in possession of the property. *See CSX Transportation, Inc.*, 879 F.3d at 69. Allstar's motion speaks only of personal jurisdiction over the Defaulting Defendants. *See* Motion at 5, 62. It says nothing of the Court's jurisdiction over any third parties, nor does it provide any facts that would allow the Court to make such a finding.

Allstar's Proposed Order is even more troublesome in that it seeks to endow Allstar with the power to garnish assets yet to be discovered from individuals and entities yet to be identified. As Judge Woods noted with respect to the substantially similar language, "[t]he relief which Plaintiff seeks is essentially equivalent to a 'fill in the blank' order, which Plaintiff can serve at will in the future to brandish the Court's authority over unknown third-parties, the identifies of whom are unknown to the Court and over whom the Court may not possess personal jurisdiction." *Allstar Mktg. Grp. v. 158*, 2019 WL 3936879, at *4; *accord Spin Master Ltd.*, 463 F. Supp. at 384.

In sum, the Proposed Order "plainly violate[s] Rule 69, and [sections] 5222 and 5225," as it would "require unknown third-party Financial Institutions to transfer the Defaulting Defendants' assets to [Allstar], irrespective of whether other creditors held a superior claim to those assets." *Allstar Mktg. Grp. LLC v. 66LinMeiCheng66*, No. 19 Civ. 4209 (KPF), 2020 WL 3578094, at *2 (S.D.N.Y. July 1, 2020) (internal quotation marks omitted). The language of the statute plainly

14

requires a judgment creditor to give notice to the third party in possession of the assets and to the defendant. The fact that "no third parties have raised any issue regarding Plaintiff's requests either in this case or when previously ordered by judges in this district in similar cases," Motion at 62, is immaterial and cannot overcome the clear statutory language.

The Court pauses to note that the alternative basis for Allstar's proposed asset freeze—that it "is necessary to preserve [Allstar's] right to the relief sought in the Complaint, including an equitable accounting"—is also unpersuasive. Motion at 54. A court has the authority to issue a pre-judgment asset freeze "in favor of plaintiffs seeking an accounting against allegedly infringing defendants in Lanham Act cases." *Gucci Am. Inc. v. Bank of China*, 768 F.3d 122, 131-32, 137-38 (2d Cir. 2014). Allstar originally sought such relief here. *See* Dkt. 9 ¶ K. An accounting is an equitable remedy used in pursuit of an award of profits. *Gucci Am. Inc.*, 768 F.3d at 131-32. But at this stage, Allstar elected for statutory damages, and it is well-settled that statutory damages and actual damages are not coextensive. *See* 15 U.S.C. § 1117(c) (statutory damages can be elected "instead of actual damages and profits"); *Louis Vuitton Malletier S.A. v. LY USA, Inc.*, 676 F.3d 83, 110-11 (2d Cir. 2012) ("In 1996, Congress . . . amended section 1117 to add subsection (c), providing for the alternative of statutory damages. . . . [T]he Act . . . allows trademark plaintiffs to elect to recover statutory damages in counterfeit cases in lieu of actual damages . . . ."); *Tiffany (NJ) LLC v. QI Andrew*, 2015 WL 3701602, at *8 ("When profits are difficult to calculate, or for any other reason, a plaintiff may elect to receive statutory damages. As the text of Section 1117(c) indicates, statutory damages provide relief exclusive of recovery for profits and actual damages available under Section 1117(a)."). Courts in this District therefore regularly have held that a plaintiff who has elected to pursue statutory damages cannot rely on the equitable accounting remedy to justify a post-judgment asset freeze. *See Tiffany (NJ) LLC v. QI Andrew*, 2015 WL

3701602, at *12 (rejecting the plaintiff's argument that *Gucci America, Inc.* should extend to post-judgment asset freezes); *accord Klipsch Grp., Inc. v. Big Box Store Ltd.*, No. 12 Civ. 6283 (AJN), 2012 WL 5265727, at *4, 6 (S.D.N.Y. Oct. 24, 2012).

To be clear, none of this Court's Order is meant to preclude Allstar's ability to pursue any remedies available under the N.Y. C.P.L.R. *See Allstar Mktg. Grp. v. 158*, 2019 WL 3936879, at *4 ("Despite the Court's refusal to enter the default judgment as proposed, Plaintiff is free to pursue any remedies available to it under the C.P.L.R."); *see also WowWee Grp. Ltd.*, 2019 WL 1375470, at *11 ("To the extent Plaintiffs are concerned about the risk that Defaulting Defendants will dispose of, transfer, or hide their assets, it should turn to the remedies ordinarily applicable to enforcement of judgments at law under Rule 69 and N.Y. C.P.L.R. § 5222."). Allstar suggests that Rule 62 will frustrate any remedies under the N.Y. C.P.L.R., arguing that pursuant to Rule 62, "no execution may issue on a judgment, nor may proceedings be taken to enforce it, until 14 days have passed after its entry," thereby giving the Defaulting Defendants time to conceal their assets. Motion at 56-57 (quoting Fed. R. Civ. P. 62(a)); *see also Tiffany (NJ) LLC v. Forbse*, No. 11 Civ. 4976 (NRB), 2015 WL 5638060, at *4 (S.D.N.Y. Sept. 22, 2015). But this is no longer true following the 2018 Amendments to Rule 62, as Allstar surely is aware. *See, e.g.*, *Allstar Mktg. Grp., LLC v. 158*, 2019 WL 3936879, at *4 n.6 (notifying Allstar of the 2018 amendments); *Allstar Mktg. Grp., LLC v. 123 Beads Store*, No. 19 Civ. 3184 (AJN), 2020 WL 5836423, at *7 and n.4 (S.D.N.Y. Sept. 30, 2020) (discussing Rule 62 and notifying Allstar that it had cited to a previous version of the Rule); *Allstar Mktg. Grp., LLC v. Bigbigdream320*, No. 19 Civ. 3182 (AJN), 2020 WL 5836514, at *7 and n.4 (S.D.N.Y. Sept. 30, 2020) (same); *Allstar Mktg. Grp., LLC v. 178623*, No. 19 Civ. 3186 (AJN), 2020 WL 5836512, at *7 (S.D.N.Y. Sept. 30, 2020) (same). Rule 62 now provides that "execution on a judgment and proceedings to enforce it are stayed for 30 days

after its entry, *unless the court orders otherwise*." Fed. R. Civ. P. 62 (emphasis added). The Court therefore has the power to order the execution of a judgment to occur before the close of this 30-day window. *See, e.g.*, *Mattel, Inc.*, 2020 WL 2832812, at *7 ("Plaintiff's concerns [about dissipation of assets] may be addressed by allowing for immediate enforcement of the judgment in this case, which Rule 62 explicitly grants this Court authority to order. Accordingly, the Court dissolves the automatic stay imposed by Rule 62 and allows for immediate enforcement of the judgment." (citation omitted)); Fed. R. Civ. P. 62 advisory committee's note to 2018 amendment ("Amended Rule 62(a) expressly recognizes the court's authority to dissolve the automatic stay or supersede it by a court-ordered stay. One reason for dissolving the automatic stay may be a risk that the judgment debtor's assets will be dissipated."). As such, the Court dissolves the automatic 30-day stay imposed by Rule 62 to allow for immediate enforcement of the judgment.

    SO ORDERED.

Dated: June 22, 2021
       New York, New York

                                            JOHN P. CRONAN
                                    United States District Judge